## Millhimes v. Legg

*Oscar F. Spicer*, for plaintiffs.
*Robert W. Geigley*, for defendants.

MacPHAIL, P. J., March 24, 1975.—This case is now before us by reason of exceptions filed by plaintiffs to the court's findings of fact, conclusions of law and decree nisi.

Plaintiffs instituted this action in equity to prevent defendants from closing a right-of-way used by plaintiffs to reach their woodlot. In our adjudication, we determined that plaintiffs had proved all of the elements of a right-of-way by adverse use, but that section 21 of the Act of April 25, 1850, P. L. 569, 68 PS §411, applied to the facts of the case. That statute provides that no right-of-way can be obtained by prescriptive use through "uninclosed [sic] woodland." We came to the conclusion that the right-of-way passed through unenclosed woodland largely by reason of the physical appearance of the right-of-way and surrounding land as of the date we viewed the premises with counsel.

Some of plaintiffs' exceptions to our adjudication relate to our use of the view in our findings and particularly to our conclusion that because the right-of-way may now run through unenclosed woodland, it must have done so at the time the right-of-way ripened.

Since our adjudication was filed, there has been a most startling development. The Act of 1850, supra, has been repealed by "housekeeping amendments" to the Probate, Estates and Fiduciaries Code, which amendments were incorporated in the Act of December 10, 1974 (No. 293). The effect of that legislative action is not crystal clear. The Act of 1850 was in derogation of common law. The Act of November 25, 1970, P. L. 707 (No. 230), as amended, 1 Pa. S., §1978) provides that where a statute created property rights in derogation of common law, the repeal of that statute does not *revive* the prior inconsistent common-law rule but merely indicates that the general assembly recognizes that such property right has been received into the common law of Pennsylvania. Read literally, section 1978, supra, would seem to say that the repeal of the Act of 1850 would have no effect whatsoever upon the litigation now before us. However, the question remains *at what point in time* has the common-law right been received into and become a part of the common law of the Commonwealth? The question seems particularly pertinent in the situation where Pennsylvania did recognize the common-law property right, then provided an exception to it by virtue of the enactment of the Act of 1850, and now has repealed the exception. However, on balance, it seems logical to conclude that the effective date of the repealer is the date when the Commonwealth once again "recognizes" the property right created by common law. We conclude that the repeal of the Act of 1850 does not affect the litigation now before us.

Plaintiffs' exception to our use of the view is well taken. In our adjudication, we did use the view for more than an understanding of the evidence or to determine the relative weight of conflicting testi-

mony. Except in eminent domain cases it would appear that use of the view is limited to those purposes: Cowan v. Bunting Glider Co., 159 Pa. Superior Ct. 573, 49 A. 2d 270 (1946). Suffice it to say that our use of the view in *this* opinion will be so limited.

It will be noted that paragraph 9 of plaintiffs' complaint states that the portion of defendants' land through which the road traverses "*is* open farmland and at no point does the road pass through unenclosed woodland" (emphasis supplied). Our view certainly corroborates defendants' testimony that there *are* presently trees on both sides of the road for at least some measurable distance before the road reaches defendants' woodlot. Obviously, this constitutes a substantial variance between the pleadings and the proof. However, no objection was made by defendants during the trial and, therefore, the defect is deemed to be waived: Williams v. Philadelphia Transportation Company, 219 Pa. Superior Ct. 134, 280 A. 2d 612 (1971).

Plaintiffs argue, however, that the condition *now* does not control. They maintain that they proved a right-of-way by prescriptive use which matured at some time in the past before the trees which are presently there, were visible.

At the time of our adjudication, we did not have the notes of testimony available to us. When the exceptions were filed and arguments were heard, plaintiffs requested that the testimony of certain witnesses be transcribed. That has been done. A Mr. Snyder said he used the road every three or four months from 1940 to 1973. He said the land to the east of the right-of-way was woodland, but the land on the west (defendants' land) was "pretty well" open land which had not been farmed for years. The witness was never questioned about when the trees which are now

visible were first visible to him. It is quite apparent that they must have been visible some time prior to · 1973.

George Millhimes, one of the plaintiffs, said that he was familiar with the road for 19 years. When he was asked if the road went through any unenclosed woodland when he first used it (19 years ago), his answer was in the negative. On cross-examination, the witness said, "There is [sic] some big trees in there but mostly all brush." He also agreed that the condition on his side of the fence is about the same on defendants' land. From our observation, Mr. Millhimes' land is certainly woodland, and we would agree that the physical appearance of both tracts in the vicinity of the road is similar.

S. E. Shull said that he had knowledge of the road for about 60 years. He said that wood had been cut "out of the area" *years ago* but he said that the land on defendants' side of the right-of-way was "more brush with a few trees." D. L. Shull said that he was familiar with the road for 65 to 70 years and that the land on the west was open land—"wasn't growed [sic] up much, maybe a few cedar trees or something small."

Defendants, of course, had not been familiar with the land until late 1968. They produced no witnesses as to the situation prior to their acquisition except some aerial photographs which were not of much more use than plaintiffs' geological surveys in determining exactly where defendants' land was located in relation to woodland shown on the surveys and the photographs. Most of those exhibits indicate woodland in the vicinity of the road. The difficulty is that plaintiffs' woodlot was never precisely located on the exhibits.

Plaintiffs ask us to find that *some time* in the past

the right-of-way in question ripened through adverse use over land that was open (not unenclosed woodland) from the point the right-of-way entered defendants' land to the point where it entered plaintiffs' land. No one can deny that there are trees on the west side of the road now. From our view, they appear to have been there for some time. At least one of plaintiffs' witnesses admitted that there had been some wood cut out of the area years ago. On the occasion of our view, the road was barely discernible and was mostly covered with heavy grass. However, there was some evidence that the right-of-way had several tracks indicating that the same right-of-way had not been used all of the time. In our adjudication, we had cited Nicolet Industries v. Marial Corporation, 93 Montg. 243 (1970), for a discussion of the purposes of the Act of 1850. One of those purposes was that a road through woodland can be shifted from time to time and the result would be that a road would be incapable of exact delineation and a precise easement would not be definitely marked. As we noted in our prior adjudication, this has resulted in this particular area.

In short, we are still of the opinion that plaintiffs have failed to meet their burden of proof. We cannot guess when it was that the right-of-way ripened. We repeat that we have no doubt that the road was *used*. The issue is whether or not the road passed through unenclosed woodland at any time when the right-of-way was maturing. Since we don't know when the right-of-way matured in relation to the trees which were cut years ago or those which are now plainly visible, we cannot find in plaintiffs' favor.

## DECREE OF COURT

And now, March 24, 1975, the decree entered June 4, 1974, is hereby entered as a final decree.